Shook, Hardy & Bacon, LLP
Joseph Patrick Kendrick, Bar No. 7-5301
1660 17th Street, Suite 450
Denver, CO 80202
(303) 285-5300
jpkendrick@shb.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | | |
|---|---|---|---|
| Plaintiff: | LIBERTY MUTUAL | ) | |
| | INSURANCE COMPANY, | ) | Civil Action Case No. 1:23-cv-172 |
| | . | ) | |
| | | ) | |
| vs. | | ) | |
| | | ) | |
| Defendant: | THE CINCINNATI | ) | |
| | INSURANCE COMPANY, | ) | |
| | | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Liberty Mutual Insurance Company ("Liberty"), by its undersigned attorneys, bring this declaratory judgment action against Defendant The Cincinnati Insurance Company ("Cincinnati") and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory relief pursuant to the authority set forth in Federal Rule of Civil Procedure 57 and 28 U.S.C. Sections 2201 and 2202. Defendant Cincinnati is wrongfully refusing to defend Plaintiff's insured, Simon Contractors of Wyoming, Inc. ("Simon") in two separate lawsuits where individuals claim they were injured as a result of the negligence of Cincinnati's insured, S & J Signs, Inc. ("S & J"). Liberty seeks a determination of rights with respect to an additional insured endorsement in Cincinnati's insurance policy with S & J.

2.      Simon is a general contractor based in Wyoming. In 2018, Simon was the general contractor for a highway construction project spanning 11 miles of Interstate 80 between Cheyenne and Pine Bluffs, Wyoming. ("Project").

3.      S & J, one of Simon's subcontractors for the Project, was responsible for the protection of the work area on the Project through the utilization of lights, barriers, supports and guards. Simon and S&J are parties to a subcontract dated January 14, 2018 ("Subcontract"), wherein S & J agreed, among other things, to (1) obtain and maintain a specific type and amount of insurance; (2) ensure that Simon was named as an "additional insured" on such policy; and (3) indemnify, defend and hold Simon  harmless "from and against any and all liability, losses, damages, costs, claims, lawsuit…arising from bodily injury to any persons…occurring or arising out of or in connection with [S & J's work], whether or not occurring or arising out of or claimed to have occurred or arisen out of the concurrent acts, negligence or omissions of [Simon], Owner, their agents or employees. A true and correct copy of the Subcontract is attached as Exhibit 1.

4.      Cincinnati was S & J's insurer through Policy No. CSU0050843 ("Cincinnati Policy"). A true and correct copy of S & J's Certificate of Liability Insurance is attached as Exhibit 2. As required by the Subcontract, Simon was named as an additional insured on the Cincinnati Policy.

5.      Simon also has its own insurance through Liberty pursuant to its Policy No. TB2-631-004090-878 ("Liberty Policy").

6.      On November 2, 2021, Gregory Ware ("Ware") filed a lawsuit in the United District Court for the District of Wyoming against Simon and S & J alleging negligence resulting in injury. ("Ware Lawsuit"). A true and correct copy of the complaint filed in the Ware Lawsuit is attached as Exhibit 3.

4876-3384-4352

7.      Ware alleges that he sustained bodily injuries on September 1, 2018, when the tractor-trailer he was traveling in as a passenger caught a drop-off on the edge of the roadway that was not identified, and not protected by any barriers. This caused the truck to roll over and Plaintiff was ejected from the vehicle in the process. *See* Exhibit 3.

8.      On July 14, 2022, Rodney Gibson – the driver of the tractor-trailer in which Ware was a passenger – filed his own lawsuit alleging negligence resulting in injury. ("Gibson Lawsuit"). A true and correct copy of the complaint filed in the Gibson Lawsuit is attached as Exhibit 4.

9.      Like Ware, Gibson alleges that he sustained bodily injuries on September 1, 2018, when the tractor-trailer he was driving caught a drop-off on the edge of the roadway that was not identified, and not protected by any barriers.

10.     Gibson also specifically alleges that (1) S&J agreed in its subcontract with Simon to "adequately and properly protect Simon's work of construction by utilizing lights, barriers, supports and guards so as to avoid injury or damage to persons or property," Exhibit 4 at ¶ 11, and (2) S&J agreed it was directly responsible for any negligence in the performance of their work." *Id*. at ¶13.

11.     Collectively, the Ware Lawsuit and the Gibson Lawsuit are referenced herein as the "Underlying Actions."

12.     Upon the filing of the complaints in the Underlying Actions, Liberty (on behalf of itself and Simon) sent multiple tender notices to Cincinnati and S & J demanding (1) insurance coverage (*i.e.*, a defense and indemnity) from Cincinnati as an additional insured under the commercial package insurance policy Cincinnati issued to S & J; and (2) contractual indemnification from S & J pursuant to the Subcontract.

13. Despite these repeated demands, and despite that the Underlying Actions are undeniably covered within the scope of the indemnification provisions of the Subcontract and the additional insured provisions of the Cincinnati Policy, Cincinnati and S & J have refused to provide Simon with a defense (or indemnification) in the Underlying Actions, thereby forcing Simon's general liability insurer, Liberty, to defend Simon against the Underlying Actions.

14. Liberty has paid and continues to pay for Simon's defense in the Underlying Actions. Pursuant to Rule 57 and 28 U.S.C. sections 2201 and 2202, Liberty seeks (1) a determination regarding the obligations of Cincinnati to Simon as an additional insured under the Cincinnati Policy; and (b) a declaration that Cincinnati is contractually obligated to pay the defense expenses already incurred and to be incurred in the defense of Simon in the Underlying Actions.

## PARTIES, JURISIDCTION AND VENUE

15. Liberty is a corporation organized under the laws of the State of Massachusetts with its principal place of business in Boston, Massachusetts.

16. Upon information and belief, Cincinnati is a corporation organized under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio.

17. Non-party Simon is a corporation organized under the laws of the State of Wyoming with its principal place of business in Cheyenne, Wyoming.

18. Upon information and belief, non-party S & J is corporation organized under the laws of the State of Wyoming with its principal place of business in Cheyenne, Wyoming.

19. This Court has jurisdiction over the matter, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the Plaintiff and Defendant, and the amount of controversy exceeds $75,000, exclusive of interest and costs.

4876-3384-4352

20.     Liberty and Cincinnati do business in this district, out of which the causes of action in this case arise. Liberty and Cincinnati, therefore, are subject to personal jurisdiction in this district, and venue is proper in this district under 28 U.S.C. § 1391.

**RELEVANT TERMS AND CONDITIONS OF THE CINCINNATI POLICY AND ADDITIONAL INSURED ENDORSEMENT**

21.     Cincinnati issued to S & J a commercial general liability policy, Policy No. CSU0050843, with a policy period of September 10, 2017, to September 10, 2018, (the "Cincinnati Policy"). The Cincinnati Policy extends additional insured status to certain parties – including Simon – in accordance with the provisions of Form CSGA437 (12/13) (the "Additional Insured Endorsement"). A true and correct copy of the Additional Insured Endorsement is attached as Exhibit 5.

22.     The Additional Insured Endorsement provides the Cincinnati Policy is amended to include any person or organization that S & J has "agreed in writing in a contract or agreement that such person or organization be added as an additional insured." *See* Ex. 5 at Section A.

23.     The Additional Insured Endorsement further confirms an additional insured is insured under the Cincinnati Policy for claims of bodily injury:

> caused ***in whole or in part*** by … [S & J's] acts or omissions in the performance of [its] ongoing operations for the additional inured; … or [S & J's] work performed for the additional insured and included in the products-completed operations hazard.

*See* Exhibit 5 at A.

24.     The intent of the Additional Insured Endorsement is clearly to provide a scope and breadth of additional insured coverage that is consistent with the agreed indemnity under the Subcontract Agreement. *See* Exhibit 5 at A.2 ("If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide …").

## RELEVENT TERMS AND CONDITIONS OF SUBCONTRACT AGREEMENT

25.     The Subcontract Agreement executed by Simon (Contractor) and S&J (Subcontractor) required S & J to provide proper signage and traffic control surrounding the construction site at issue.

26.     The Subcontract Agreement also expressly requires that S & J obtain and maintain insurance and requires that Simon be named as an additional insured on such S & J policy. Section V of the Subcontract provides, in relevant part, that:

> Subcontractor hereby agrees that before commencing any work it will obtain and maintain . . . Comprehensive General Liability Insurance, including production, completed operations, premises and contractual liability endorsements with limits of at least $2,000,000 for each occurrence.
>
> [and]
>
> [a]ll insurances maintained by Subcontractor . . . shall name Contractor and, where applicable, Owner, as additional insureds.
>
> [and]
>
> All insurance maintained by Subcontractor will be primary to, and not contributing with, any other available insurance coverage of Contractor and Owner.

*See* Exhibit 1, Section V.

27.     S & J also agreed to broadly indemnify Simon against exactly the type of claims and allegations asserted in the Underlying Actions. Section VI of the Subcontract Agreement provides, in pertinent part, that S&J agrees to defend, indemnify, and hold harmless Simon:

> from and against any and all liability, losses, damages, costs, claims, lawsuits, whether groundless or not, . . . *occurring or arising out of or in connection with the Subcontractor's Work,* **whether or not occurring or arising out of or claimed to have occurred to arisen out of the concurrent acts, negligence or omissions of the Contractor,** Owner, their agents or employees.
>
> *See* Exhibit 1, Section VI (emphasis added).

## RELEVANT TERMS AND CONDITIONS OF THE LIBERTY POLICY

28.     Liberty issued to Simon a Commercial General Liability policy, policy no. TB2-631-004090-878 with policy effective dates of 4/1/2018 to 4/1/201. (the "Liberty Policy").

29. The Liberty Policy, in pertinent part, provides:

      8.     **Transfer of Rights of Recovery Against Others To Us**

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*See* Portion of Liberty Policy attached as Exhibit 6 at Section 8.

## THE UNDERLYING ACTIONS

30.     Both the Ware Lawsuit and the Gibson Lawsuit allege that the plaintiffs in those cases sustained bodily injuries as a result of the negligence of S & J.

31.     The Ware Lawsuit expressly recognizes the scope of S&J's responsibilities in the terms of the Subcontract Agreement and seeks to hold Simon liable for the work performed by S&J. For instance, the Complaint alleges:

- "S&J Signs, Inc. provided no warning signs to warn drivers of the steep edge drop off, nor did it erect barriers to protect dr[i]vers from the steep edge drop off," Ex. 3 at ¶ 1;

- "On January 14, 2018, Simon and Defendant S&J Signs entered into a subcontract agreement whereby S&J Signs agreed to adequately and properly protect Simon's work of construction by utilizing lights, barriers, supports and guards, so as to avoid injury or damage to persons or proper[t]y. Pursuant to the subcontract agreement, S&J Signs agreed to bear direct responsibility for damages to persons and property by their failure to do so," *Id*. at ¶ 12;

- "On those sections of highway in which edge drop off exceeded 1 in., Simon *and S&J Signs* failed to warn drivers of any potential danger," *Id*. . ¶ 16 (emphasis added); and

- "On those sections of high way in which edge drop off exceeded 1 in., Simon *and S&J Signs* failed to erect sufficient barriers to protect drivers from potential danger," *Id.*. ¶ 17 (emphasis added).

32.    The complaint in the Gibson Lawsuit similarly emphasizes S&J's alleged role in the alleged accident. From the first paragraph on, the Gibson Lawsuit makes clear it is a case concerning an alleged "failure to warn" of a hazard at a construction site. Ex. 4 at ¶ 1. Notably, warnings and signage were the explicit responsibility of S&J under the Subcontract Agreement.

33.    As in the Ware Lawsuit, the Gibson Lawsuit seeks to hold Simon liable in connection with S&J's work:

- "On January 14, 2018, Defendants entered into a subcontract agreement whereby [S&J] agreed to protect [Simon's] work adequately and properly by using lights, barriers, supports and guards, to prevent injury or damage to persons or property," Ex. 4 at ¶ 11;

- S&J "undertook direct responsibility for damages to persons and property caused by its failure to comply with its obligations under the contract," *Id.* at ¶ 12;

- S&J "further agreed it was directly responsible for any negligence in the performance of its work," *Id.* at ¶ 13;

- "*Both defendants* failed to warn drivers of any potential danger where the edge drop-offs along the project exceeded one inch in violation of the controlling DOT Specifications," *Id.* at ¶ 16 (emphasis added);

- "*Both defendants* failed to erect sufficient barriers to protect drivers from any potential danger where the edge drop-offs along the project exceeded one inch," *Id.* at ¶ 17 (emphasis added);

- "No warning signs were present to warn drivers of the edge drop-off," *Id.* at ¶ 23;

- "No barriers were present to prevent drivers from crossing the edge-drop [*sic*] off," *Id.* at ¶ 24;

4876-3384-4352

- "**Defendants** and their employees and staff knew about the hazards of failing to follow DOT Specifications including **failing to warn and provide barriers** when the edge drop off exceeded one inch in height," *Id*. at ¶ 30 (emphasis added); and

- "**Defendants** intentionally disregarded and failed to follow DOT specifications including **failing to warn and provide barriers** when the edge drop off exceeded one inch in height," *Id*. at ¶ 31 (emphasis added).

34.    Even the specific cause of action asserted against Simon alleges Simon breached its duty of care based on the purported "[f]ailure to provide **adequate warnings** for edge drop offs" and the "[f]ailure to erect **sufficient barriers** to protect drivers from edge drop offs." Ex. 4 at ¶ 36 (emphasis added).

## CINCINNATI REFUSES TO DEFEND SIMON

35.    Contrary to Wyoming law obligating an insurer to afford a defense if the alleged claim "rationally falls within the policy coverage," Cincinnati rejected the tender by Liberty and Simon because, in Cincinnati's opinion, it did not "appear that the loss occurred as a result of the work of S & J." *See* Correspondence from Cincinnati Claim Supervisor Jennifer Hayes to Judy Zuniga dated January 14, 2022 ("Denial Letter") attached as Ex. 7.[1]

36.    Cincinnati argues in its Denial Letter that its policy "limits additional insured coverage to be '[n]o broader than that which [S & J is] required by the contract or agreement to provide for such additional insured.'" *See* Denial Letter, Ex. 7. Then, purportedly relying on language in the Subcontract, Cincinnati asserts that the claims against Simon in the Underlying Actions "[do] not arise out of or have any connection whatsoever to S & J's work." *Id*. In support of its argument, Cincinnati Denial Letter omits express language (in **bold** below) from the

---

[1] The Denial Letter only references the Ware Lawsuit because it was sent before the filing of the Gibson Lawsuit.  However, in subsequent communications Cincinnati and S & J have stated that they also deny coverage and indemnification for the Gibson Lawsuit under the same rationale.

referenced provision in the Subcontract, which states that S & J agrees to defend, indemnify and hold Simon harmless:

> from and against any and all liability, losses, damages, costs, claims, lawsuits, whether groundless or not, . . . occurring or arising out of or in connection with the Subcontractor's Work, **whether or not occurring or arising out of or claimed to have occurred to arisen out of the concurrent acts, negligence or omissions of the Contractor,** Owner, their agents or employees.

*See* Subcontract Agreement, Ex. 1 at Section VI.

37.     In response to Cincinnati's Denial Letter, Liberty and Simon have repeatedly demanded that Defendant's comply with Wyoming law and defend Simon in the Underlying Actions. In doing so, Liberty and Simon have repeatedly pointed out that under Wyoming law it is the allegations in the underlying complaints, not an insurer's supposed assessment of the actual cause of the loss, that controls whether an insurer is obligated to provide a defense. *See* Correspondence from Elisabeth Hutchinson to Jennifer Hayes dated September 22, 2022 ("September 2022 Response to Coverage Denial") attached hereto as Exhibit 8.

38.     As noted in Liberty's September 2022 Response to Coverage Denial, under Wyoming law the *allegations* in the Underlying Actions alone control the analysis of whether Cincinnati is obligated to provide a defense. *See Reisig v. Union Ins. Co.,* 870 P.2d 1066, 1069 (Wyo.1994) ("[W]e look *only* to the allegations of the Complaint filed by [the third-party complainant] to see if there is alleged a loss caused by an occurrence as required by the CGL policy." (emphasis added) (internal quotation marks omitted)); *Heart Mountain Irrigation Dist. v. Argonaut Ins. Co.*, No. 07-CV-136-B, 2008 WL 11336403, at *3 (D. Wyo. Feb. 8, 2008) (explaining that "[t]he Wyoming Supreme Court has consistently stated that a Court shall only consider the underlying complaint in conjunction with the insurance policy when determining whether there was a duty to defend" and collecting cases).

4876-3384-4352

39.     Further, any alleged "concurrent acts, negligence or omissions" of Simon are irrelevant to Defendant's duties to defend Simon against the claims in the Underlying Actions. Instead, the only relevant question is whether the allegations against Simon in the lawsuit are "connected" to S&J's work. Here, the plaintiffs in the Underlying Actions have explicitly made allegations against Simon connected to S&J's work. In fact, the allegations against Simon largely stem from the exact tasks and responsibilities that S&J express agreed to perform under the Subcontract Agreement.

40.     Despite repeated demands for defense (and indemnity) of Simon in the Underlying Actions – the most recent of which was sent by Liberty's counsel on September 8, 2023, and is attached as Exhibit 9 – Cincinnati and S & J continue to refuse to fulfill their respective contractual obligations.

## COUNT I

## DECLARATORY JUDGMENT AS TO
## CINCINNATI'S OBLIGATION TO DEFEND SIMON AS AN ADDITIONAL INSURED

41.     Plaintiff restates and incorporates all paragraphs herein.

42.     Under the Cincinnati Policy obtained and maintained by S & J, additional insured status is extended to any person or organization that S & J has "agreed in writing in a contract or agreement that such person or organization be added as an additional insured."

43.     As part of its subcontract with Simon to perform safety, signage and barricade services for the Project, S & J promised to, and did, provide liability insurance covering Simon as an additional insured for claims occurring or arising out of or in connection with S & J's work, whether or not occurring or arising out of or claimed to have occurred or arisen out of the concurrent acts, negligence or omissions of the Contractor, Owner, their agents or employees.

44.     Simon is therefore an additional insured under the Cincinnati Policy.

45.     Cincinnati has wrongfully denied insurance coverage, including but not limited to coverage for Simon's defense of the Underlying Actions which Plaintiff Liberty has paid to date.

46.     Simon's right to recover such insurance proceeds, including defense costs, due and owing from Cincinnati under the Cincinnati Policy have been transferred from Simon to Liberty.

WHEREFORE, Plaintiff requests that this Court enter an Order declaring that Simon is an additional insured under the Cincinnati Policy; that Cincinnati had and has a duty to defend Simon in the Underlying Actions to the full extent of the limits of such coverage; and for all other relief that this Court deems is just and proper.

## COUNT II

## EQUITABLE CONTRIBUTION

47.     Plaintiff restates and incorporates all paragraphs herein.

48.     Plaintiff Liberty has paid Simon's defense costs to date relating to the Underlying Actions.

49.     The Cincinnati Policy insured the same party, interests, and risks as the Liberty Policy.

50.     The terms and provisions of the Cincinnati Policy as amended by the Additional Insured Endorsement obligates Defendant Cincinnati to pay costs of defense for the Underlying Action.  Liberty was wrongfully required to pay such costs as a result of Cincinnati's failure to pay such sums due and owing under its Policy.

51.     To date, Cincinnati has failed and refused to pay any of Simon's defense costs for the Underlying Actions in satisfaction of its contractual obligation to Simon as an additional insured.

52.     Plaintiff is therefore entitled to contribution from Cincinnati for any and all defense costs paid by Liberty for which Cincinnati is rightfully liable.

12

WHEREFORE, Plaintiff requests that this Court enter an Order (1) declaring that Plaintiff is entitled to contribution from Cincinnati for the amount of Simon's defense (past, ongoing and future) in the Underlying Actions, or for such other amount as the Court deems just and reasonable; and (2) entering judgment against Cincinnati and in favor of Liberty, for the amounts already paid by Liberty for the defense of the Underlying Actions; and (3) entering an award for statutory interest on all amounts owed by Defendant to which Plaintiff is entitled by law, as well as costs and such other relief as the Court may deem just and proper.

DATED this 20th day of September, 2023.

SHOOK, HARDY & BACON, LLP

By: */s/ Joseph Patrick Kendrick*
Joseph Patrick Kendrick
Daniel E. Rohner (*pro hac vice* forthcoming)
1660 17th Street, Suite 450
Denver, CO 80202
Phone:  (303) 285-5300
Fax:     (303) 285-5301
Email:  drohner@shb.com
          jpkendrick@shb.com

13